UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANINE M. RAQUET,<br><br>    Plaintiff,<br><br>v.<br><br>THE ALLSTATE CORPORATION,<br><br>    Defendant. | Case No. 18-cv-02347<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This diversity case arises out of a dispute over an equity incentive plan between Defendant Allstate Corporation and Plaintiff Jeanine Raquet, a former Allstate senior executive. Plaintiff alleges that Allstate improperly canceled stock awards that it previously granted Plaintiff under the plan when Plaintiff took a job at The Auto Club Group ("AAA") within weeks of retiring from Allstate. Plaintiff's amended complaint asserts claims for: breach of contract (Count I); implied covenant of good faith and fair dealing (Count II); negligent misrepresentation (Count III); action in equity for relief from fraud (Count IV); and common law fraud (Count V).

Defendant moves to dismiss all counts. [22]. Plaintiff moves to strike Defendant's affirmative defenses. [32]. For the reasons explained below, this Court grants in part and denies in part Defendant's motion to dismiss, and grants Plaintiff's motion to strike.

I.   **Background**

Defendant markets itself as the largest publicly held personal lines property and casualty insurer in America. [21] ¶ 4.[1]  Plaintiff worked a longtime employee for Defendant from January 2, 1985, until the date of her early retirement on December 31, 2016.  *Id.* ¶ 6.  For the last 9 years of her employment with Defendant, Plaintiff held the position of Senior Vice President, Field Business Conduct Officer.  *Id.*

In May 2001, Defendant began offering its Equity Incentive Plan (the Plan). *Id.* ¶¶ 7, 9.  The primary purpose of the Plan was to "provide a means by which employees . . . can acquire and maintain stock ownership, thereby strengthening their commitment to the success of the Company and its Subsidiaries and their desire to remain employed by the Company."  *Id.* ¶ 8.

Under the Plan, an employee could receive various awards, including nonqualified stock options, incentive stock options, stock appreciation rights, unrestricted stock, restricted stock, restricted stock units, performance units, and performance stock.  *Id.* ¶ 14.  In exchange for performing under the Plan, Plaintiff received various awards, including stock option awards, restricted stock unit awards, and performance stock awards.  *Id.* ¶ 15.

In February 2012, Defendant amended the Plan, and included, for the first time, a "Non-Competition" provision (Non-Competition Provision), which provided:

> 17.3 *Non-Competition.*  Any Participant who has received an Award under the Plan on or after February 21, 2012, that remains subject to a Period of Restriction or other performance or vesting condition, shall not, for the two-year period following Termination of Employment, directly or indirectly engage in, own or control an interest in or act as

---
[1] This Court takes these facts from Plaintiff's amended complaint [21].

2

> principal, director, officer, or employee of, or consultant to, any firm or company that is a Competitive Business. "Competitive Business" is defined as a business that designs, develops, markets, or sells a product, product line, or service that competes with any product, product line, or service of the division in which Participant works. . . . A participant is not subject to this non-competition provision if: (1) employed in any jurisdiction where the applicable law prohibits such non-competition provision.
>
> * * *
>
> If a Participant violates the non-competition provision set forth above, the Board or a committee thereof may, to the extent permitted by applicable law, cancel or cause to be cancelled any or all of the Participant's outstanding Awards granted on or after February 21, 2012, that remain subject to a Period of Restriction or other performance or vesting condition as of the date on which the Participant first violated the non-competition provision.

[21] ¶ 17; [21-2] at 23–24.

In 2013, Allstate issued an updated version of the Plan. [21] ¶ 22. The 2013 version included a Non-Competition Provision that was substantially similar to that of the 2012 version, except that it restricted competition for a one-year period following termination of employment for awards issued on or after May 1, 2013. [21-3] at 23.

By the time she retired in December 2016, Defendant had granted Plaintiff several awards. [21] ¶ 32. Less than one month after she retired, on January 23, 2017, Plaintiff began a new position at AAA in Dearborn, Michigan. *Id.* ¶ 30.

In February 2017, shortly after Plaintiff began working for AAA, Defendant's Executive Vice President of Human Resources, Harriet Harty, sent Plaintiff a letter (the Harty letter), which stated:

3

> As we discussed, your employment with a competitor of Allstate Insurance Company . . . violates the terms of [the Plan] awards referenced below. . . . Pursuant to the terms of the Plan, if a Participant violates the Plan's non-competition provision, any outstanding Awards granted on or after February 21, 2012, that remain subject to a Period of Restriction or other performance or vesting condition will be cancelled.

[21-4] at 1. The Harty letter then detailed the various awards that Plaintiff accrued between 2013 and 2016 that Defendant canceled effective February 10, 2017. *Id.*

Defendant now moves to dismiss Plaintiff's amended complaint. [22]. Defendant also answered and asserted three affirmative defenses to Plaintiff's amended complaint, which Plaintiff moves to strike. [32].

## II. Legal Standard

### A. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all

4

reasonable inferences in the plaintiff's favor. *Id.* This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### B. Rule 12(f) Motion to Strike

Under Rule 12(f), this Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). While motions to strike "are generally disfavored because of the likelihood that they may only serve to delay proceedings," when "striking portions of a pleading 'remove[s] unnecessary clutter from the case,' the motion may 'serve to expedite, not delay.'" *Naylor v. Streamwood Behavioral Health Sys.*, No. 11 C 50375, 2012 WL 5499441, at *7 (N.D. Ill. Nov. 13, 2012) (quoting *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989)).

An affirmative defense must satisfy three criteria to survive a motion to strike under Rule 12(f): (1) it must be properly pleaded as an affirmative defense; (2) it must be adequately pleaded under Rules 8 and 9; and (3) it must withstand a Rule 12(b)(6) challenge. *Hughes v. Napleton's Holdings, LLC*, No. 15 C 50137, 2016 WL 6624224, at *2 (N.D. Ill. Nov. 9, 2016); *Renalds v. S.R.G. Rest. Grp.*, 119 F. Supp. 2d 800, 802–03 (N.D. Ill. 2000).

### III. Analysis

#### A. Defendant's Motion to Dismiss

##### 1. Count I: Breach of Contract

Plaintiff asserts that Defendant is liable for breach of contract because it canceled Plaintiff's 2013 through 2016 awards. [21] ¶¶ 43–54. Defendant moves to dismiss on the basis that Plaintiff's employment at AAA triggered the Non-Competition Provision of the 2012 and 2013 versions of the Plan, thus providing Defendant the right to cancel those awards. [23] at 6–11.

As a threshold matter, the parties dispute whether Illinois or Delaware law applies to Plaintiff's breach of contract claim. Plaintiff alleges in her amended complaint that Illinois law applies, *see* [21] ¶ 42, while Defendant argues that Delaware law applies because the Plan contains a choice-of-law clause providing that the "Plan, and all agreements hereunder, shall be construed in accordance with, and governed by, the laws of the State of Delaware, except with regard to conflicts of law provisions," [23] at 7 n.2; [21-1] at 24.

Federal courts sitting in diversity apply the choice-of-law rules of the state in which they sit. *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1048 (7th Cir. 2016). In Illinois, a choice-of-law determination "is required only when a difference in law will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014) (quoting *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007)). In this case, as detailed below, the application of Illinois or Delaware law does not yield different outcomes, rendering a

6

choice-of-law determination unnecessary at this stage.

Under both Illinois and Delaware law, a plaintiff asserting a breach of contract claim must plead: (1) the existence of a valid and enforceable contract; (2) defendant's breach of contract; and (3) damages resulting from the breach. *Lindy Lu LLC v. Illinois Cent. R. Co.*, 984 N.E.2d 1171, 1175 (Ill. App. Ct. 2013); *Tani v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1023 (D. Del. 2011).[2]

Here, the parties' sole dispute concerns whether Plaintiff sufficiently pleads Defendant's breach. [23] at 6–11; [31] at 2–6. Defendant contends that, when Plaintiff went to work for AAA in January 2017, she violated the Non-Competition Provision of the 2012 and 2013 versions of the Plan, and under those circumstances, Defendant had the right to cancel her awards. [23] at 6–11.

Defendant's argument, however, fails because it requires this Court to presume that Plaintiff, in fact, left Defendant to work for a company that constitutes a "Competitive Business." The Non-Competition Provision provides that Plaintiff shall not "directly or indirectly engage in, own or control an interest in or act as principal, director, officer, or employee of, or consultant to, any firm or company that is a Competitive Business." [21-2] at 23–24; [21-3] at 23. The Plan further defines "Competitive Business" as "a business that designs, develops, markets, or sells a product, product line, or service that competes with any product, product line, or service of the division in which Participant works." *Id.*

---

[2] Illinois law also requires a plaintiff to plead her own performance of all required contractual conditions. *See Lindy Lu*, 984 N.E.2d at 1175.

7

Here, in the operative complaint, Plaintiff asserts only that she started working for AAA in January 2017. [21] ¶ 30. But whether AAA qualifies as a "Competitive Business" under the Plan, cannot be determined at this point in the proceedings, and this Court cannot simply draw an inference in Defendant's favor that AAA *is* a "Competitive Business" for the purposes of a motion to dismiss. As such, this Court cannot accept Defendant's contention that it rightfully canceled Plaintiff's awards (and therefore did not breach the Plan) because Plaintiff violated the Non-Competition Provision. And, because Defendant fails to challenge any other element of Plaintiff's breach of contract claim, this Court denies Defendant's motion to dismiss Count I.

### 2. Count II: Implied Covenant of Good Faith & Fair Dealing

Defendant also moves to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, arguing that it is legally deficient under both Delaware and Illinois law. [23] at 10–12.[3]

In Illinois, the covenant of good faith and fair dealing "is only an aid to interpretation, not a source of contractual duties or liability under Illinois law." *Zeidler v. A & W Restaurants, Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) (citing *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996)). Illinois has only recognized an independent action for breach of implied covenant of good faith and fair dealing in the "narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder." *APS Sports Collectibles, Inc. v. Sports Time,*

---

[3] Plaintiff cites to both Illinois and Delaware cases in support of this claim; therefore, this Court analyzes it under both states' laws. *See generally* [31] at 6–8.

8

*Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (quoting *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001)). Because Plaintiff's claim does not fall within that narrow exception, it is legally deficient under Illinois law. *See id.*; *Zeidler*, 301 F.3d at 575.

Under Delaware law, a plaintiff "cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005). Thus, the implied covenant does not apply when "the subject at issue is expressly covered by the contract." *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009) (quoting *Dave Greytak Enterprises, Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch.), *aff'd*, 609 A.2d 668 (Del. 1992)). General allegations of "bad faith" are insufficient; rather, a plaintiff "must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

Here, Plaintiff's breach of implied covenant claim is deficient under Delaware law for two reasons. First, her amended complaint is devoid of any allegation concerning a specific implied obligation in the Plan. *See generally* [21]. For this reason alone, Plaintiff's implied covenant claim must be dismissed. *See Kuroda*, 971 A.2d at 888. Second, the Plan by its express terms provides Defendant with the authority to determine the terms and conditions of any awards issued pursuant to the Plan, and specifically limits Defendant's liability to decisions that are not made in good faith. *See* [21] ¶ 36; [21-1] at 11 ("No member of the Committee shall be liable

9

for any action or determination made in good faith with respect to the Plan or any Award."). The Plan therefore already contains an express contractual duty to act in good faith. Because the implied covenant does not apply when the subject at issue is expressly covered by the contract, Plaintiff's implied covenant claim is legally deficient under Delaware law. *See Stewart v. BF Bolthouse Holdco, LLC*, No. CV 8119-VCP, 2013 WL 5210220, at *17 (Del. Ch. Aug. 30, 2013) (dismissing implied covenant claim where the defendant "was *expressly* required to act in good faith") (emphasis in original).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is deficient under both Illinois and Delaware law. As such, this Court dismisses Count II of Plaintiff's amended complaint with prejudice.

### 3. Count III: Negligent Misrepresentation

The parties agree that Illinois law applies to Plaintiff's negligent misrepresentation claim. *See* [23] at 13–14; [31] at 9–13. Defendant argues that Plaintiff fails to plead that Defendant, as her employer, owed Plaintiff a duty to convey accurate information. [23] at 13–14.

To state a claim for negligent misrepresentation, a "plaintiff's complaint must first allege facts establishing a duty owed by the defendant to communicate accurate information." *Brogan v. Mitchell Intern., Inc.*, 692 N.E.2d 276, 278 (Ill. 1998). Illinois recognizes that duty only where: (1) conveying false information results in physical injury to a person or harm to property; or (2) one is in the business of supplying information for the guidance of others in their business transactions. *Id.*; *see also*

10

*Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 648 (Ill. App. Ct. 2012) (noting that Illinois "negligent misrepresentation actions are almost universally limited to situations involving a defendant who, in the course of his business or profession, supplies information for the guidance of others in their business relations with third parties.").

In reliance upon *Brogan*, Illinois federal courts have held that "Illinois has not expanded the duty requirement in a negligent misrepresentation claim to include the employment context." *Jones v. W.S. Darley & Co.*, No. 14-CV-8873, 2015 WL 4100295, at *4 (N.D. Ill. July 7, 2015); *see also Dargo v. Clear Channel Commc'ns, Inc.*, No. 07 C 5026, 2008 WL 2225812, at *4 (N.D. Ill. May 28, 2008) ("Illinois does not recognize a cause of action for negligent misrepresentation in the employment context."); *Sinio v. McDonald's Corp.*, No. 04 C 4161, 2007 WL 869553, at *14 (N.D. Ill. Mar. 19, 2007).

Here, Plaintiff pleads neither of the circumstances under which Illinois courts have found a cognizable duty sufficient to state a claim for negligent misrepresentation. *See* [21]. She does not allege any physical injury or property damage, and Defendant is not in the business of providing information for the guidance of others in their business transactions. For this reason, this Court dismisses Plaintiff's negligent misrepresentation claim with prejudice.

### 4. Count IV: Action in Equity for Relief from Fraud

Defendant moves to dismiss Plaintiff's claim for equity for relief from fraud, arguing that it is not a cognizable cause of action under Illinois law. [23] at 14 n.4.

11

In response, Plaintiff fails to point to any Illinois cases supporting such a cause of action, and accordingly concedes this point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Plaintiff instead urges this Court to deny Defendant's motion upon the basis that Delaware courts have recognized the cause of action. [31] at 14. Plaintiff does not explain why Delaware law applies here. But even if it did, Plaintiff ignores that Delaware recognizes an equitable fraud claim only where there is: "(1) a special relationship between the parties or other special equities, such as some form of fiduciary relationship; or (2) a justification for a remedy that only equity can afford." *Zebroski v. Progressive Direct Ins. Co.*, No. CIV.A. 8816-VCP, 2014 WL 2156984, at *7 (Del. Ch. Apr. 30, 2014) (internal quotation marks omitted).

Here, Plaintiff pleads neither a fiduciary relationship giving rise to her claim, nor an injury that could only be redressed by equitable relief. [21]. In fact, on the latter point, she expressly seeks damages. *Id.* at 12–13. This Court therefore dismisses Plaintiff's equitable fraud claim with prejudice.

### 5. Count V: Common Law Fraud

The parties agree that Illinois law applies to Plaintiff's fraud claim. [23] at 14–16; [31] at 14–15. To state a fraud claim under Illinois law, Plaintiff must plausibly plead: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v.*

12

*PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (1996)).

Plaintiff's fraud claim remains based upon the Harty letter. [21] ¶¶ 89, 96–103; [31] at 14.[4] Plaintiff asserts that Harty's letter contained false statements—namely, that Plaintiff's awards were being canceled due to Plaintiff's supposed violation of the non-competition provision. [21] ¶¶ 89, 94. Plaintiff alleges that Defendant knew that Plaintiff's awards were not subject to the non-competition provision when they sent her the letter, but canceled the awards nonetheless. *Id.* ¶ 96. Plaintiff claims she relied upon the letter by seeking legal representation in this case. *Id.* ¶ 98.

Based upon the record, Plaintiff's fraud claim is deficient because it fails to plausibly allege: (1) any false statement of material fact; or (2) reliance upon the truth of any purported statement. First, as Defendant correctly argues, the amended complaint fails to adequately allege the falsity of any statement in the Harty letter. *See* [23] at 14–16. The Harty letter provides, in pertinent part:

> As we discussed, your employment with a competitor of Allstate Insurance Company . . . violates the terms of [the Plan] awards referenced below. . . . Pursuant to the terms of the Plan, if a Participant violates the Plan's non-competition provision, any outstanding Awards granted on or after February 21, 2012, that remain subject to a Period of Restriction or other performance or vesting condition will be cancelled.

[21-4] at 1.

---

[4] Although Plaintiff also pleads one other purported false statement in her amended complaint, [21] ¶¶ 90–91, she states in her opposition brief that her fraud claim is premised solely upon the letter, [31] at 14–15.

13

Plaintiff, however, has not alleged any facts suggesting that there is anything false about this statement, or any other statement, in the Harty letter. Accordingly, Plaintiff's amended complaint fails to allege any false statement.

Nor does Plaintiff plausibly allege reliance upon the truth of any statement in the Harty letter. Even assuming there was a false statement in the Harty letter, Plaintiff's own allegations make clear that she did not rely upon it as true. Indeed, Plaintiff asserts that she "relied on the [Harty] letter . . . by seeking legal representation in this cause of action to obtain the benefit of the awards she had lost." [21] ¶ 98. This assertion indicates that, if anything, Plaintiff believed that the statements in the Harty letter were *untrue*, because upon receiving the letter, Plaintiff retained legal counsel to initiate this lawsuit. And, this lawsuit seeks to prove that, contrary to what the Harty letter stated, Plaintiff did *not* violate the Non-Competition Provision. Accordingly, Plaintiff does not plausibly allege that she relied on any statements *as true* from the Harty letter.

Plaintiff fails to sufficiently plead two elements of an Illinois fraud claim. As such, this Court dismisses Plaintiff's fraud claim with prejudice.

### B. Plaintiff's Motion to Strike

In its answer, Defendant asserts three affirmative defenses: (1) failure to state a claim (First Affirmative Defense); (2) estoppel, waiver, ratification and acquiescence (Second Affirmative Defense); and (3) unjust enrichment (Third Affirmative Defense). [25] at 30.

Plaintiff moves to strike all three affirmative defenses, arguing that they are inadequately pled. [32] at 4. This Court addresses each disputed affirmative defense in turn.

### 1. First Affirmative Defense: Failure to State a Claim

Defendant's First Affirmative Defense states: "Plaintiff's claims are barred, in whole or in part, by her failure to state a claim upon which relief can be granted, and Defendants refer to their previously filed Motion to Dismiss and Memorandum in support of the same." [25] at 30.

Whether "failure to state a claim" can be properly asserted as an affirmative defense is not settled within the Seventh Circuit. *Compare, e.g.*, *Illinois Wholesale Cash Register, Inc. v. PCG Trading, LLC*, No. 08 C 363, 2009 WL 1515290, at *2 (N.D. Ill. May 27, 2009) (striking a "failure to state a claim" affirmative defense because "the proper vehicle for a party to establish a failure to state a claim is a Rule 12(b)(6) motion"); *with LaSalle Bank Nat'l Assoc. v. Paramont Properties*, 588 F. Supp. 2d 840, 860 (N.D. Ill. 2008) ("failure to state a claim" can be properly asserted as an affirmative defense "even though it is not among the Rule 8(c)'s enumerated affirmative defenses.").

This Court takes the view of *Illinois Wholesale*, which is that "failure to state a claim" is not technically an affirmative defense, and the proper vehicle to establish a failure to state a claim defense is to raise a Rule 12(b)(6) motion. And here, Defendant did move to dismiss under Rule 12(b)(6), thus obviating any need to

15

contemporaneously plead "failure to state a claim" as an affirmative defense. Accordingly, this Court strikes Defendant's First Affirmative Defense with prejudice.

### 2. Second Affirmative Defense: Waiver, Estoppel, Ratification and Acquiescence

Defendant also moves to strike Plaintiff's Second Affirmative Defense, which states:

> Plaintiff's claims are barred, in whole or in part, under the doctrines of estoppel, waiver, ratification and/or acquiescence. Plaintiff actually or constructively consented and voluntarily agreed, either expressly or impliedly, to the [Non-Competition Provision] set forth in the 2012 Plan and the 2013 Plan without threat, coercion or compulsion. Plaintiff continued to accept the benefits of the stock awards granted to her under the 2012 Plan and the 2013 Plan with full knowledge of the terms and conditions set forth therein.

[25] at 30. Plaintiff does not dispute that waiver, estoppel, ratification and acquiescence are actual affirmative defenses, but instead argues that they are inadequately pled. [32] at 6–9.

This Court agrees, because Defendant here pleads "waiver, estoppel, ratification, and/or acquiescence" without segregating which facts support each of those separate defenses. Defendant thus fails to apprise Plaintiff and this Court of the predicate for each claimed defense. For this reason alone, Defendant's Second Affirmative Defense must be dismissed.

Moreover, waiver and estoppel are equitable defenses "that must be pled with the specific elements required to establish the defense." *Marina Bartashnik v. Bridgeview Bancorp, Inc.*, No. 05 C 2731, 2005 WL 3470315, at *4 (N.D. Ill. Dec. 15, 2005). Here, Defendant fails to plead essential elements of either defense. Thus,

16

this Court is left to speculate as to which aspects of Plaintiff's conduct constituted "voluntary relinquishment of a known right, claim or privilege," or how Plaintiff led Defendant to "detrimentally rely upon" her conduct or statements. *See R & B Kapital Dev., LLC v. N. Shore Cmty. Bank & Tr. Co.*, 832 N.E.2d 246, 255 (Ill. App. Ct. 2005) (explaining elements of waiver and estoppel under Illinois law).

For these reasons, this Court strikes Defendant's Second Affirmative Defense without prejudice, but gives Defendant leave to replead its waiver, estoppel, ratification, and acquiescence defenses, provided if it can do so consistent with this Court's order and Defendant's Rule 11 obligations.

### 3. Third Affirmative Defense: Unjust Enrichment

Finally, Plaintiff moves to strike Defendant's Third Affirmative Defense, which states that:

> Plaintiff's claims are barred, in whole or in part, under the doctrine of unjust enrichment. Plaintiff is currently working for a competitor of Allstate, where she is presumably receiving a significant salary and attendant benefits. To permit her to retain the benefit of the outstanding stock awards while also remaining employed by a competitor of Allstate would unfairly and unjustly enrich Plaintiff to the detriment of Allstate.

[25] at 30.

At the outset, this Court notes that unjust enrichment is not an affirmative defense under Illinois law, *see Warrior Ins. Grp., Inc. v. Insureon.com, Inc.*, No. 00 C 3619, 2000 WL 1898867, at *1 (N.D. Ill. Dec. 29, 2000), although at least one court has construed it as a counterclaim when pled as an affirmative defense, *see Minalga*

17

*v. Fid. Investments Institutional Operations Co.*, No. 01 C 4173, 2002 WL 31527251, at *2 (N.D. Ill. Nov. 14, 2002).[5]

Even if Defendant's assertion of unjust enrichment constitutes a counterclaim, however, it nonetheless must be stricken. In Illinois, unjust enrichment "is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009). Instead, "it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Id.* (quoting *All. Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995)). Therefore, when an underlying claim of fraud, duress, or undue influence is deficient, an unjust enrichment claim must also be dismissed. *Id.* (affirming dismissal of unjust enrichment claim where there was no valid underlying fraud claim).

Here, Defendant has not asserted any cause of action for fraud, duress, or undue influence. Therefore, its unjust enrichment "defense" cannot be maintained under Illinois law. For this reason, this Court strikes Defendant's Third Affirmative Defense with prejudice.

## IV. Conclusion

This Court grants in part and denies in part Defendant's motion to dismiss [22]. Counts II–V of Plaintiff's Amended Complaint [21] are dismissed with prejudice.

This Court grants Plaintiff's motion to strike [32]. Defendant's First

---

[5] The parties agree that Illinois law applies to Defendant's unjust enrichment "affirmative defense." *See* [32] at 10–11; [41] at 8–9.

18

Affirmative Defense ("Failure to State a Claim") and Third Affirmative Defense ("Unjust Enrichment") are stricken with prejudice. Defendant's Second Affirmative Defense ("Estoppel, Waiver, Ratification and Acquiescence") is stricken without prejudice. Defendant should file any amended affirmative defenses within 21 days of the entry of this order. All other dates and deadlines stand.

Dated: November 5, 2018

Entered:

_____
John Robert Blakey
United States District Judge